UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL WILLIAMS, | Civil Action No.: 20-10373 |
| | Honorable Terrence G. Berg |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 13]**

Plaintiff Michael Williams appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for Supplemental Security Income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Williams's motion [ECF No. 11] be **DENIED**;
- the Commissioner's motion [ECF No. 13] be **GRANTED**; and
- the Commissioner's decision be **AFFIRMED** under sentence four

of 42 U.S.C. § 405(g).

I. **BACKGROUND**

   A. **Background and Disability Applications**

Williams was 43 years old, which is defined as a "younger individual age 18-49," on the date he filed his application. [ECF No. 9-2, PageID.49]. He completed the 11th grade and worked long ago as a security guard but had no past relevant work for purposes of this application. [*Id.*, PageID.64]. He alleged disability because of frozen left shoulder, left rotator cuff tear, bilateral carpal tunnel syndrome (CTS), sciatica, back problems, chronic obstructive pulmonary disease (COPD), removal of left testicle, and depression. [ECF No. 9-4, PageID.261].

After the Commissioner denied his disability application initially, Williams requested a hearing, which took place in September 2018, and during which he and a vocational expert (VE) testified. [ECF No. 9-3]. In a December 2018 written decision, the ALJ found Williams to be not disabled. [ECF No. 9-2, PageID.49-65]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Williams timely filed for judicial review. [*Id.*, PageID.35-38; ECF No. 1].

### B.     The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Williams was not disabled. At the first step, she found that Williams had not engaged in substantial gainful activity since December 2, 2016, the application date. [ECF No. 9-2, PageID.51]. At the second step, the ALJ found that Williams had the severe impairments of degenerative disc disease with scoliosis, bilateral CTS, obesity, COPD, left shoulder impairment, osteoarthritis, and headaches. [*Id.*]. The ALJ found the following non-severe impairments: anxiety; depression; gastroesophageal reflux disease (GERD); hypertension; hernia repair; and transurethral incision of prostate. [*Id.*, PageID.51-52]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.53].

Between the third and fourth steps, the ALJ found that Williams had the RFC to perform light work as defined in 20 C.F.R. 416.967(b),

> except that [he] can only frequently handle, finger, and feel

4

>bilaterally. [He] can frequently balance, but can only occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. [He] can never climb ladders or scaffolds. He can never be exposed to unprotected heights and must avoid hazardous machinery. [He] must also avoid concentrated exposure to temperature extremes, vibration, and pulmonary irritants. He can never operate a motor vehicle or use handheld power tools. [He] must never reach overhead with the left upper extremity and requires a cane for ambulation.

[*Id.*].

At the fourth step, the ALJ found that Williams had no past relevant work. At the fifth and final step, after considering Williams's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that he could perform jobs as a marker, router, and cashier. [*Id.*, PageID.65].

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

(6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Williams argues that the ALJ improperly weighed the opinion of his treating physician, Nael Tarakji, M.D., and erred by not adopting limitations assessed by the consultative examiner, Samiullah Sayyid, M.D.  The Court rejects these arguments and concludes that the ALJ's opinion is supported by substantial evidence.

**B.**

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so; "these reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." *Gayheart v. Comm'r. of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). A failure to explain precisely how those reasons affected the weight accorded to the treater's opinion denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860-861 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243).

Williams argues that the ALJ failed to give good reasons for discounting Dr. Tarakji's opinion that he could sit for two hours and stand for one hour during a workday; must alternate between sitting and standing; could lift less than 10 pounds; required frequent unscheduled breaks lasting between half an hour to an hour; and was severely limited in the use of his upper extremities for reaching, handling, and fingering. [ECF No. 11, PageID.955-960; ECF No. 9-10, PageID.922-924]. The ALJ assigned "little weight" to Dr. Tarakji's opinion because it was "not consistent with the other evidence of record, and the severity of limitations is not supported by the objective medical evidence." [ECF No. 9-2, PageID.63].

An ALJ must articulate good reasons to permit "meaningful appellate review" and ensure that claimants "understand the disposition of their cases." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal quotation marks and citation omitted). Alone, an ALJ's single-

7

sentence analysis fails to provide good reason.  *See Vitale v. Comm'r of Soc. Sec.,* 2017 WL 4296608, at *3-4 (E.D. Mich. Sept. 28, 2017).  But the ALJ's whole decision must be considered when determining whether she has articulated good reasons for discounting the weight given to the treating physician's opinion.  *Id.*, at *2; *see also Stewart v. Comm'r of Soc. Sec.,* 811 F. App'x 349, 352 (6th Cir. 2020*)* (An ALJ can satisfy the good-reason requirement "by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.") (internal citations and quotation marks omitted, emphasis in original).

Here, the decision read as a whole supplies good reasons for discounting Dr. Tarakji's opinions.  Before addressing the opinion evidence, the ALJ discussed records from Jose B. Lopez, M.D., from November 2017 noting that Williams was moving and more physically active.  [ECF No. 9-2, PageID.61, citing ECF No. 9-10, PageID.757].  Williams had reported that he had just had a shot in his back and the "pain was almost gone."  [*Id.*].

The ALJ also noted an April 2018 "MRI of the sacroiliac joints with attention to the left side" that "showed no significant evidence of ankylosis or advanced inflammatory arthropathy pattern in the sacroiliac joints, and no incidental fracture or acute soft tissue abnormality was detected."  [*Id.*, citing ECF No. 9-10, PageID.765].  That same MRI report noted "no

evidence of significant inflammatory arthropathy involving sacroiliac joints on the right or left side[,] [n]o significant effusion[,] [n]o pathologic widening of the SI joints is detected" and "no inflammatory changes at the L5-S1 periarticular facet spaces." [ECF No. 9-10, PageID.765]. It also described mild facet degenerative changes at L5-S1 bilaterally, no disc L5-S1 herniated disc, no incidental soft tissue muscle injury, or significant muscle atrophy, and no abnormal soft tissue fluid collections. [*Id*.]. Although the ALJ did not delineate these findings from the MRI report, she referred to the MRI results more generally, so the Court can consider the full MRI report. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017), *aff'd sub nom Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) (relying on evidence in the record not mentioned in the decision when the ALJ "referenced such evidence in a more general way.").

A later MRI of the right hip likewise showed no bony or soft tissue abnormality. [*Id*., citing ECF No. 9-10, PageID.933]. A June 2017 EMG study showed "electrodiagnostic evidence of L3/L4, L4/L5 and to a lesser extent L5/S1 root irritation bilaterally, likely related to degenerative lumbar spine disease with possible neural foraminal narrowing or central stenosis, [but] [t]here was no evidence of lumbosacral plexopathy, diffuse

9

neuropathy or mononeuropathy of either lower extremity." [*Id.*, PageID.60 citing ECF No. 9-10, PageID.917].

The report from that study suggests an MRI of the lumbar spine for further evaluation, but the only MRI of the lumbar spine in the medical record, which was discussed by the ALJ, is from 2012. [ECF No. 9-10, PageID.917; ECF No. 9-9, PageID.645; ECF No. 9-2, PageID.56]. The 2012 MRI report noted a history of pain, numbness, and tingling radiating bilaterally to the legs dating back ten years. [ECF No. 9-9, PageID.645]. The MRI revealed mild spondylotic change in the lower lumbar spine, stable mild stenosis at L5-S1 from prominent epidural fat and no focal herniation or frank nerve root compression. [*Id.*].

The ALJ also discussed Williams's left shoulder impairment in detail. [ECF No. 9-2, PageID.56-58]. An April 2016 MRI revealed a partial tear of the rotator cuff and a SLAP tear. [*Id.*, PageID.56 citing ECF No. 9-9, PageID.684]. A physical examination of Williams's left shoulder revealed no obvious difference from the right shoulder; he had near full range of motion and tenderness strength with flexion and internal rotation. [ECF No. 9-2, PageID.56 citing ECF No. 9-8, PageID.539]. The examining orthopedist encouraged continued home exercises and management with pain specialist. [*Id.*, citing ECF No. 9-8, PageID.540]. Surgery was not

recommended. [*Id.*]. A follow-up examination in August 2016 again revealed no deformities of the left shoulder, full range of motion, tenderness through extremities, and weakness compared to right side. [ECF No. 9-2, PageID.57, citing ECF No. 9-8, PageID.537-538].

    Notes from an office visit at Ortho Michigan in January 2017 reported a history of injections and physical therapy, but Williams could not demonstrate any physical therapy exercises when asked. [*Id.*, PageID.58]. On exam, he actively could barely generate 90 degrees of abduction. [*Id.*, PageID.58, citing ECF No. 9-8, PageID.534-535]. Sidney Martin, M.D., advised Williams to undergo manipulation under anesthesia with an intra-articular steroid injection. [*Id.*]. As noted by the ALJ, Williams demonstrated dramatically improved range of motion during a February 2017 office visit. [*Id.*, citing ECF No. 9-9, PageID.742]. Williams could reach across and grab his right shoulder with his left hand, and had almost 180 degrees abduction. [*Id.*]. Dr. Martin did not believe surgery would be necessary. [*Id.*]. The ALJ erroneously said that an April 2017 report showed that Williams's left shoulder had significantly improved; the report said that he had seen "little to no relief" after conservative treatment and manipulations. [*Id.*, citing ECF No. 9-9, PageID.736]. But the ALJ correctly described Williams's normal EMG and nerve conduction study of Williams's

left upper extremity in April 2017. [*Id.*, citing ECF No. 9-9, PageID.734-735].

The ALJ discussed Williams's diagnosis of CTS. [ECF No. 9-2, PageID.59-63]. She noted the findings of Dr. Sayyid, the consultative examiner, who diagnosed CTS but found near normal fine and gross dexterity in both upper extremities and in the grip in both hands. [*Id.*, PageID.59, citing ECF No. 9-9, PageID.695-696]. Dr. Sayyid observed some tenderness on dorsiflexion of the wrist, meaning that the Phalen sign was positive. [*Id.*, PageID.59, citing ECF No. 9-9, PageID.695-696]. The ALJ noted that Dr. Tarakji diagnosed Williams with bilateral CTS and treated him with trigger point injections. [*Id.*, PageID.61, citing ECF No. 9-10, PageID.912]. She also referred to a June 2017 electrodiagnostic report showing bilateral median dysfunction at the wrist, confirming diagnosis of mild to moderate CTS. [*Id.*, PageID.60, citing ECF No. 9-10, PageID.921].

In sum, the ALJ's decision contains eight pages of discussion of Williams's back, hip, shoulder, and hand impairments. [ECF No. 9-2, PageID.55-63]. She cited the objective medical evidence—including relatively insignificant findings on diagnostic imaging and testing (2012 MRI of lumbar spine, 2018 MRIs of left and right hip, MRI of left shoulder, EMG of lower and upper extremities, nerve conduction studies), and

conservative treatment (physical therapy, injections, pain medication, anti-inflammatory medication)—and found that evidence to contradict the severity of the limitations suggested by Dr. Tarakji. [ECF No. 9-2, PageID.55-63]. The "good reasons" rule required the ALJ to explain her reasoning for discounting the weight given to the treating physician's opinion, but it does not permit this Court to reweigh the evidence. *Barnard v. Berryhill*, No. 1:17-CV-02575, 2019 WL 1242856, at *8 (N.D. Ohio Mar. 18, 2019). The ALJ explained her reasoning, and Williams's claim of error should be rejected

## C.

Williams argues that the ALJ erred by failing to adopt all the limitations assessed by the consultative examiner despite affording his opinion significant weight. He specifically challenges the ALJ's failure to credit or even mention Dr. Sayyid's notation that he could lift, carry, push, and pull less than 10 pounds. [ECF No. 11, PageID.961-962]. But an ALJ need not adopt all the restrictions from an examining physician, even if she gave the physician's opinion great weight. *Price v. Comm'r of Soc. Sec.*, 2016 WL 3193025, at *2 (E.D. Mich. June 9, 2016).

More critically, even if failing to credit Dr. Sayyid's could be construed as error, it would not require remand. Remand is not required unless there

13

is reason to believe that it might lead to a different result. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004). Dr. Sayyid's weight restriction, if adopted, would restrict Williams to sedentary work. 20 C.F.R. § 416.967(a). Here, the VE testified that Williams could do many jobs even if he were limited to sedentary rather than light work. [ECF No. 9-3, PageID.196-197]. Thus, the ALJ's failure to adopt Dr. Sayyid's weight restriction does not create reversible error.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Williams's motion for summary judgment [ECF No. 11] be **DENIED**; that the Commissioner's motion [ECF No. 13] be **GRANTED**; and that the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Dated: February 18, 2021

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 18, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
